UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
RICHARD BOYLE,

                    Plaintiff,

                    -against-                                    08 Civ. 11358 (LAK)

HSBC BANK, USA, INC.,

                    Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


                    **MEMORANDUM OPINION**


          Appearances:

                    Michael Borrelli
                    LAW OFFICE OF BORRELLI AND ASSOCIATES, P.L.L.C.
                    *Attorney for Plaintiff*

                    Kenneth J. Kelly
                    Lori A. Jordan
                    EPSTEIN BECKER & GREEN, P.C.
                    *Attorneys for Defendants*


LEWIS A. KAPLAN, *District Judge.*

          Plaintiff, a former employee of defendant HSBC Bank USA, N.A. ("HSBC"), alleges

that he was paid lower bonuses than his peers, demoted, and constructively discharged because of

his age in violation of the Age Discrimination in Employment Act ("ADEA"), the New York State

Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL").  He

alleges also that the demotion and constructive termination were retaliation for filing an age-

discrimination complaint with the HSBC human resources department.  Defendant moves for

summary judgment dismissing all claims.

*Facts*

Plaintiff was born on July 18, 1948.[1]  In February 2004, when he was 55 years old, he joined HSBC's Cash Management & Electronic Banking Group in New York City with a corporate title of first vice president.[2]  His employment with HSBC stopped on October 23, 2007.[3]  It is undisputed that, during his employment, plaintiff had several subordinates, including Bob Shetty, Anthony Julian, and Wayne Ferguson.  Plaintiff contends that Vladmir Popovic, John Vogan, Tammy Extavour, and Simon Fan  reported to him as well.

Throughout plaintiff's employment he earned $175,000 in base salary and reported to Ray Fattell, a senior vice president.[4]  Fattell, in turn, reported to Michael Gallagher, an executive vice president.[5]  It is undisputed that James Colassano, Sherri Morlock, and Jeanette Pilié also reported directly to Fattell.  Plaintiff contends that Samantha Britell and Elisa Chrysanthis did as well, and that all five employees were his "peers."  Defendant disputes this characterization since the five did not have the same job responsibilities as plaintiff.[6]  At the time plaintiff was hired, he was the highest-paid employee in Gallagher's department that did not directly report to Gallagher.[7]

---

[1]    Def. Rule 56.1 St. ¶ 2.

[2]    *Id.* ¶ 3.

[3]    *Id.* ¶ 94.

[4]    *Id.* ¶ 6-7.

[5]    *Id.*

[6]    *Id.* ¶¶ 50-56.

[7]    *Id.* ¶ 7.

Each of Gallagher and Fattell separately interviewed plaintiff prior to his employment.[8]  Plaintiff testified that Gallagher asked him during the interview about his "time horizon" for retirement.  Plaintiff responded that he wished to retire in June 2008, when he would be 60 years old.[9]  Gallagher does not recall this conversation.[10]

*HSBC's Performance Evaluations and Bonuses*

Each spring, HSBC provided plaintiff with a performance evaluation prepared by Fattell and signed by Gallagher.[11]  In each case, plaintiff received an overall rating of "3," indicating that he "consistently achieved the performance level required by the business."[12]  In each year, however, plaintiff received criticism about his management, leadership, and strategic abilities.  In the 2004, review Fattell noted that plaintiff "needs to be more detail oriented in order to provide the necessary management guidance for his team."[13]  In 2005, he commented that "[i]n 2006, I would like to see [plaintiff] create a strategic view of each market segment and be less reactive to market

---

[8]      *Id.* ¶ 11.

[9]      *Id.* ¶ 12.

[10]     *Id.* ¶ 13-14.

[11]     *Id.* ¶ 16.

[12]     *Id.* ¶ 17.

[13]     *Id.* ¶ 18.

situations."[14]  Gallagher noted that "we need more drive and leadership from [plaintiff]."[15]  In plaintiff's 2006 review, Fattell wrote that he "needs to focus on the development and execution of strategy."  Each of plaintiff's subordinates received overall ratings equal or superior to plaintiff's.

Plaintiff received a bonus payment each February.[16]  He contends, without pointing to any evidence, that in 2005 and 2006 he was entitled to a minimum bonus of 40 percent of his base salary.  In 2004, 2005, and 2006 his bonus payments were, respectively, 36 percent, 28 percent, and 20 percent of his base salary.[17]  Each year, some of plaintiff's subordinates earned larger bonuses as percentages of their base salaries.[18]  Similarly, in each year, each of the individuals plaintiff considered his "peers" received larger bonuses as percentages of their base salaries than did plaintiff.[19]  With the exception of Shetty, plaintiff was older than all of his subordinates and alleged "peers."

*Plaintiff's Age-Discrimination Complaint*

In February 2007, plaintiff orally complained to Fattell about his 2006 bonus award.[20]

---

[14]     *Id.* ¶ 21.

[15]     *Id.* ¶ 22.

[16]     *Id.* ¶ 24.

[17]     *Id.* ¶¶ 26-28.

[18]     *Id.* ¶¶ 38-39.

[19]     *Id.* ¶ 50.

[20]     *Id.* ¶ 29.

He told Fattell that he believed that his bonus had "something to do with" his age.[21] Denying the accusation, Fattell responded that plaintiffs's lack of strategic vision had impacted his bonus.[22]

On June 4, 2007, plaintiff filed an age-discrimination complaint about his 2006 bonus with Romina Dawson-Hall in the HSBC human resources department.[23] Plaintiff claimed that, because of his age, he received a smaller bonus than his peers even though he believed that his "performance . . . was significantly better than [his] peers."[24] In the complaint, plaintiff asked for 12 months of paid leave, stretching until the time he planned to retire, because of a concern that the work environment "will be hostile."[25]

Dawson-Hall denied the request for leave and investigated the complaint.[26] She denied also plaintiff's request for four weeks of paid time off while she investigated.[27] Plaintiff instead used his personal and vacation days to take time off. On June 16, 2007, Fattell wrote to Dawson-Hall, responding to plaintiff's complaint. He justified plaintiff's 2006 bonus award as reflecting plaintiff's failure to provide leadership as a manager, develop a strategy for his unit's

---

[21] *Id.* ¶ 31.

[22] *Id.* ¶ 30.

[23] *Id.* ¶¶ 35-37.

[24] Jordan Decl. Ex R.

[25] *Id.* ¶ 45.

[26] *Id.* ¶¶ 46, 57.

[27] *Id.* ¶ 61.

products, and behave appropriately towards subordinates.[28] After investigating plaintiff's complaint, Dawson-Hall concluded that there was no evidence of age discrimination.[29] There is no evidence that Fattell, Gallagher, or Dawson-Hall made any derogatory or discriminatory comments about plaintiff's age during the course of his employment.[30]

*The Alleged Retaliation*

In 2006 Fattell and Gallagher began looking for someone to take over some of plaintiff's management duties because of plaintiff's performance. In June 2007, they hired Thomas Halpin, then 44, to assume some of plaintiff's responsibilities.[31]

Later in June, plaintiff was granted leave under the Family Medical Leave Act ("FMLA") from mid-July until October to care for his sick wife. During that time, HSBC revoked his access to the company's email and computer systems.[32] On July 3, 2007, Fattell announced that plaintiff along with four of plaintiff's former subordinates would report to Halpin.

Plaintiff returned to work on October 9, 2007.[33] He found that his nameplate had

---

[28]

       *Id.* ¶ 47.

[29]

       *Id.* ¶ 60.

[30]

       *Id.* ¶ 59.

[31]

       *Id.* ¶¶ 67-68.

[32]

       *Id.* ¶ 73.

[33]

       *Id.* ¶ 75.

been removed from his cubicle and his personal effects had been placed in a box on the floor.[34] While meeting with Halpin, plaintiff learned that his new responsibilities would include only product management. He no longer would have any role managing other employees or in sales and marketing.[35] His base salary, benefits, and corporate title remained the same.[36]

On October 10, 2007, plaintiff emailed Dawson-Hall. He characterized his new responsibilities as an "inappropriate" demotion and stated he would not come to work.[37] Dawson-Hall responded that plaintiff was required to come to work.[38] On October 11, plaintiff notified Dawson-Hall that he would not return to work until he had received a job description for his new position.[39] That afternoon, Dawson-Hall emailed plaintiff a job description created by Halpin, confirmed that his compensation remained the same, and informed him that HSBC would deem his failure to return to work job abandonment. As part of that email chain, Fattell wrote to Dawson-Hall, "[a]s they say give him enough rope."[40] Dawson-Hall responded "I am hoping."[41] Plaintiff

---

[34]

*Id.* ¶ 76.

[35]

*Id.* ¶¶ 80-82.

[36]

*Id.* ¶ 83.

[37]

*Id.* ¶ 87.

[38]

*Id.* ¶ 88.

[39]

*Id.* ¶ 89.

[40]

Borrelli Cert. Ex. BN.

[41]

*Id.*

claims also that Fattell referred to him as "Elmo."[42]  On October 12, 2007, Fattell wrote to Dawson-Hall that "[w]e are pressing [plaintiff's] buttons as his tone is changing."[43]

On October 16, 2007, Fattell emailed Dawson-Hall about plaintiff and made reference to a television character, Lieutenant Columbo.[44]  Plaintiff contends this was a derogatory reference to his age.  Fattell further emailed Dawson-Hall, stating "I know this guy, if we craft the job description well, it boxes him in and he will begin to implode."[45]

Plaintiff never returned to work.  On October 23, 2007, HSBC terminated plaintiff's employment for job abandonment.[46]

Plaintiff filed this lawsuit on December 30, 2008.

*Discussion*

Summary judgment is appropriate "if the pleadings, the discovery and the disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[47]  There is a "genuine issue" of fact if

---

[42]

*Id.* Ex. BM.

[43]

*Id.* Ex. BR.

[44]

*Id.* Ex. U.

[45]

Pl. R. 56.1 St. ¶ 57; Borrelli Cert. Ex X, Ex. AH at 141.

[46]

Def. R. 56.1 St. ¶ 94.

[47]

Fed. R. Civ. P. 56©.

there is evidence from which a reasonable jury could decide the fact in the non-movant's favor.[48]
The court must "construe the facts in the light most favorable to the non-moving party and must
resolve all ambiguities and draw all reasonable inferences against the movant."[49]

*A.*     *Timeliness*

Defendant first seeks summary judgment dismissing the federal law claims on the
ground that plaintiff failed to file this lawsuit within ninety days of receiving his right to sue letter
from the EEOC as required by statute.[50]

Defendant contends that plaintiff admitted in his deposition that he actually received
the letter on September 30, 2008,[51] which was more than ninety days before the filing of this action
on December 30, 2008. The deposition testimony, however, is ambiguous, and plaintiff now affirms
that he did not receive the right to sue letter until October 2, 2008.[52] There is clearly a disputed issue
of material fact.

*B.*     *Age discrimination*

Defendant next moves for summary judgment dismissing the age discrimination

---

[48]

*Leibowitz v. Cornell Univ.*, 584 F.3d 487, 498 (2d Cir. 2009) (quoting *Guilbert v. Gardner*, 480 F.3d 140, 145 (2d Cir. 2007)).

[49]

*Id.* (quoting *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003)).

[50]

*See* 29 U.S.C. § 626(e).

[51]

Def. R. 56.1 St. ¶ 95.

[52]

Boyle Aff. ¶ 14.

claims.[53]

Claims under the ADEA are evaluated using the familiar *McDonell Douglas* burden shifting framework.[54]  To establish a *prima facie* case of age discrimination, the plaintiff must adduce evidence showing that he was (1) within the protected class, (2) qualified for the position, (3) subject to adverse employment action, and that (4) the adverse action occurred under circumstances giving rise to an inference of discrimination.[55]  If plaintiff establishes a *prima facie* case, the burden shifts to defendant to "articulate some legitimate, non-discriminatory reason" for the action.[56]  If the defendant does so, the burden shifts back to the plaintiff to adduce competent evidence reasonably supporting an inference of discrimination.[57]  At this third stage, the *McDonell Douglas* presumptions fall away, and the plaintiff must demonstrate that his age was the "but for" cause of the adverse action.[58]

Assuming *arguendo* that plaintiff has made out a prima facie case, HSBC has

---

[53]

Age discrimination claims under the NYSHRL and the NYCHRL are analyzed under the same framework as the ADEA.  *Leibowitz*, 584 F.3d at 498 n.1.  Both parties use the ADEA framework for all three claims.

[54]

*Jetter v. Knothe Corp.*, 324 F.3d 73, 75 (2d Cir. 2003).

[55]

*Id.*; *Terry v. Ashcroft*, 336 F.3d 128, 137-38 (2d Cir. 2003).

[56]

*Leibowitz*, 584 F.3d at 498-99 (citing *Patterson v. County of Oneida*, 375 F.3d 206, 221 (2d Cir. 2004)).

[57]

*James v. New York Racing Ass'n*, 233 F.3d 149, 156 (2d Cir. 2000).

[58]

*Gross v. FBL Fin. Servs., Inc.*, 129 S.Ct. 2343, 2350 (2009); *Philips v. Centrix Inc.*, 09-1012-cv, 2009 U.S. App. LEXIS 16045, at *2 (2d Cir. Dec. 1, 2009); *Wellesley v. Debevoise & Plimpton LLP*, 08-1360-cv, 2009 U.S. App. LEXIS 20843 (2d Cir. Sept. 21, 2009).

articulated legitimate, non-discriminatory reasons for its actions. Plaintiff has not adduced any admissible evidence that could justify a finding that these reasons were pretextual or that his age was a "but for" cause of his lower bonus payments, alleged demotion or alleged constructive termination. In consequence, HSBC is entitled to summary judgment on the age discrimination claims.

### 1.     *Bonus Payments and Demotion*

Plaintiff alleges that he received a lower bonus payments than he deserved and was demoted to a position with reduced responsibilities because of his age. HSBC, however, explains that plaintiff's bonus and changed responsibilities were commensurate with his performance, particularly as a manager.

The record contains uncontroverted evidence that HSBC determined bonuses based on an employee's individual performance, his division's performance, and the performance of the entire bank.[59] It is beyond dispute that plaintiff's supervisors found his ability to manage people deficient, even though his team had positive financial results. It is undisputed also that HSBC hired Halpin because of concerns about plaintiff's managerial acumen as Gallagher's group expanded.[60]

Plaintiff argues that these performance-related reasons were merely a pretext for age discrimination. In support, he adduces evidence that HSBC paid its bonuses prior to delivering performance evaluations to employees, that his team exceeded earnings expectations, and that other, younger, HSBC employees received larger bonuses (as a percentage of base salary) than he did. Plaintiff points also to evidence that he was asked about his retirement plans twice: once by

---

[59]      Def. R. 56.1 St. ¶ 25.

[60]      *Id.* ¶ 66.

Gallagher in a 2003 pre-employment interview and once by a recruiter "close to Fattell and Gallagher" in April 2007.[61]

Even drawing every reasonable inference from these facts in plaintiff's favor, he has adduced no evidence that his age, rather than his performance, was a "but for" cause of his bonus levels or demotion. Plaintiff concedes that neither Fattell nor Gallagher ever made derogatory comments to him about his age during his entire tenure at HSBC.[62] Except for Ferguson in 2006, each subordinate with a higher bonus also had a higher overall performance rating than plaintiff.[63] Ferguson's rating was equal to plaintiff's. Similarly, except for Pilié in 2005, each of plaintiff's self-described "peers" who had worked a complete year at HSBC, had a higher overall performance rating than plaintiff.[64] Pilié had the same performance rating as plaintiff. Evidence that HSBC paid higher bonuses to those with better performance, coupled with two temporally-distant inquiries about retirement, is insufficient for a reasonable trier of fact to conclude that plaintiff's age, rather than his performance as a manager, was the "but for" cause of his bonus amount and altered responsibilities.

2.    *Plaintiff's termination*

Plaintiff alleges also that HSBC terminated him because of his age. In response

---

[61]

Boyle Aff. ¶ 10.

[62]

Def. R. 56.1 St. ¶ 59.

[63]

*Id.* ¶ 38.

[64]

*Id.* ¶ 49.

HSBC argues that plaintiff abandoned his job.

Plaintiff was informed about his new job responsibilities on October 9, 2007. The next day, plaintiff notified Dawson-Hall that he was staying home because believed his new job was an "inappropriate" "demotion."[65] Dawson-Hall instructed plaintiff to return to work on October 11. On October 11, plaintiff notified Dawson-Hall that he would not return to work until he received a description of his new position.[66] Dawson-Hall sent plaintiff a description of the position and explicitly instructed him that failure to return to work would be considered job abandonment.[67] On October 12, plaintiff notified Dawson-Hall that the new responsibilities were unacceptable. He did not return to work.[68] Plaintiff has not pointed to any evidence tending to show that HSBC's reliance on his failure to show up for work was pretextual or that his age was a "but for"cause of his termination.[69] In consequence, summary judgment for HSBC on the discrimination claims is appropriate.

C.    *Retaliation*

In order to establish a *prima facie* case of retaliation under the ADEA, plaintiff must

---

[65]    *Id.* ¶ 87.

[66]    *Id.* ¶ 89.

[67]    *Id.* ¶ 91.

[68]    *Id.* ¶ 93.

[69]    *See Constance v. PepsiCo, Inc.*, No. 07-4149-cv, 2009 U.S. App. LEXIS 1069, at *5 (2d Cir. Jan. 21, 2009) (granting summary judgment for defendants on discriminatory termination claim where record evidence showed defendant failed to go to work).

adduce evidence sufficient to permit a rational trier of fact to find that (1) he engaged in protected conduct, (2) the employer was aware of this activity, (3) the employer took adverse action against the plaintiff, and (4) a causal connection exists between the protected activity and the adverse action.[70] As in the discrimination cases, once the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to proffer a non-retaliatory reason for the action.[71] If the defendant does so, the burden shifts back to the plaintiff to adduce evidence that the defendant's reason is pretext and the real reason is retaliation.[72] In this case, it is undisputed that plaintiff engaged in protected conduct and that the employer was aware of this activity.

A plaintiff suffers from adverse employment action if there is a "materially adverse change" in the terms and conditions of employment.[73] To be "materially adverse," a change must be "more disruptive than a mere inconvenience or an alteration of job responsibilities."[74] A change in responsibilities that "constitutes[s] a setback to the plaintiff's career" is adverse employment action.[75]

Plaintiff first claims that HSBC's constructive discharge of him constituted adverse

---

[70] *Kessler v. Westchester County Dep't of Soc. Servs.*, 461 F.3d 199, 205-06 (2d Cir. 2006).

[71] *Terry*, 336 F.3d at 140-41; *Jetter*, 324 F.3d at 75-76.

[72] *Id.* at 140-41; *Jetter*, 324 F.3d at 75-76.

[73] *Galabya v. New York City Board of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) (citing *Richardson v. New York State Dep't of Corr. Serv.*, 180 F.3d 426, 446 (2d Cir. 1999).

[74] *Id.*

[75] *Id.* at 641 (citing *Rodriguez v. Board of Educ.*, 620 F.2d 362 (2d Cir. 1980)).

employment action.  He has failed, however, to adduce evidence of constructive discharge.

A constructive discharge occurs when an employer "intentionally creates a work atmosphere so intolerable that [plaintiff] is forced to quit involuntarily."[76]  Working conditions are "intolerable" if they are "so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign."[77]  Plaintiff argues that the work atmosphere was "intolerable" because HSBC hired Halpin to replace him, failed to provide him with a job title or list of responsibilities from July to October 2007, cut him off from the computer network, packed up his cubicle and altered his responsibilities.  Neither plaintiff's dissatisfaction with his new assignments nor the lack of a clear role, however, is a basis for constructive discharge.[78]  Further, plaintiff was exposed to this supposedly "intolerable" atmosphere for only a few hours.[79]  A combination of personal time and FMLA leave kept him away from the office from mid-July until October.[80]

---

[76]

    *Nugent v. St. Lukes-Roosevelt Hosp. Center*, 202 Fed Appx. 943, 945 (2d Cir. 2008) (quoting *Petrosino v. Bell Atlantic*, 385 F.3d 210, 229 (2d Cir. 2004)).

[77]

    *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 73 (2d Cir. 2000).

[78]

    *Petrosino v. Bell Atlantic*, 385 F.3d 210, 231(2d Cir. 2004) ("[T]he law is clear that a constructive discharge claim cannot be proved by demonstrating that an employee is dissatisfied with the work assignments she receives with her job title.") (citing *Stetson v. NYNEX Serv. Co.*, 995 F.2d 355, 360 (2d Cir. 1993) ("A constructive discharge generally cannot be established . . . simply through evidence that an employee was dissatisfied with the nature of his assignments.")); *Pena v. Brattleboro Retreat*, 702 F.2d 322, 324-26 (2d Cir. 1983) (finding evidence of changed responsibilities and ill-defined role insufficient to establish constructive discharge claim).

[79]

    *See Kader v. Paper Software, Inc.*, 111 F.3d 337, 340-41 (2d Cir. 1997) (finding that plaintiff's failure to return to work distinguished his claim for constructive discharge from ordinary cases featuring "prolonged and continuous harassment or severe abuse.").

[80]

    Def. R. 56.1 St. ¶ 71.

During that period, he had no communications with HSBC.[81]  Plaintiff returned to his packed up cubicle on October 9, 2007, met with Halpin, learned of his new responsibilities and went home.[82] He never returned to work.  These facts, even drawing every reasonable inference from them in plaintiff's favor, are insufficient to make out a constructive discharge claim.[83]

Plaintiff next claims that his demotion and reduced responsibilities constituted adverse employment action.  The record contains evidence from which a reasonable trier of fact could conclude that the reduction in plaintiff's responsibilities was "so significant as to constitute a setback to [his] career."[84]  Plaintiff testified at his deposition that his initial job responsibilities included both product development and marketing/sales and that he managed several subordinates. It is undisputed that after Halpin was hired, plaintiff's responsibilities were reduced to include product development only and that his marketing/sales responsibilities were transferred to others.[85] Further, his former subordinates no longer reported to him.[86]  They reported, along with plaintiff himself, directly to Halpin.

The record contains evidence from which a reasonable trier of fact could conclude

---

[81]

*Id.* ¶ 74.

[82]

*Id.* ¶¶ 79-80, 93.

[83]

*Compare Kirsch v. Fleet Street, Ltd*, 148 F.3d 149, 161 (2d Cir. 1998) (finding evidence that employer reduced plaintiff's salary by over 55% and eliminated prospect of additional commission earnings constituted "intolerable" working conditions amounting to constructive discharge).

[84]

*See Galabya*, 202 F.3d at 641 (citing *Rodriguez*, 620 F.2d at 364).

[85]

*Id.*

[86]

Def. R. 56.1 St. ¶ 82.

that there was a causal connection between the protected activity and the adverse action. "The causal connection needed for proof of a retaliation claim can be established indirectly by showing that the protected activity was closely followed in time by the adverse action.[87] Here, plaintiff filed a formal complaint of age discrimination with his employer on June 4, 2007. HSBC informed him of Halpin's hiring on June 19 and some of his reduced responsibilities on July 3.[88] This temporal proximity, a separation of less than one month between complaint and the alleged adverse employment action, is sufficient to make out a *prima facie* case of retaliation.[89]

Finally, plaintiff has adduced evidence sufficient for a rational trier of fact to conclude that retaliation was the real reason for the adverse action. First, plaintiff points to the proximity in time between the complaint and HSBC's alteration of plaintiff's responsibilities. He next points to the email comments between his immediate supervisor, Fattell, and Dawson-Hall in human resources. On June 4, 2007, immediately after plaintiff formally complained of age discrimination, Fattell suggested that plaintiff be transferred to out of his group to "Trade" while Dawson-Hall's investigated.[90] On October 11, 2007, Dawson-Hall and plaintiff had an email discussion about his new responsibilities, plaintiff's dissatisfaction with them, and his refusal to return to work until he received an explanation of an "appropriate position." Dawson-Hall then

---

[87]

*Cifra v. Gen Elec. Co.*, 252 F.3d 205, 217 (2d Cir. 2001) (quoting *Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1178 (2d Cir. 1996)) (internal quotation marks omitted).

[88]

Def. R. 56.1 St. ¶¶ 69-70.

[89]

*See e.g., Cifra*, 252 F.3d at 217 (finding causal connection satisfied by interval of twenty days between employee's termination and company's knowledge of intent to pursue claim sufficient to establish prima facie case).

[90]

Borrelli Cert. Ex. BP.

forwarded this discussion to Fattell, who wrote "[a]s they say  give him enough rope."[91]  Dawson-Hall responded "I am hoping."[92]  On October 12, 2007, Fattell wrote to Dawson-Hall that "[w]e are pressing [plaintiff's] buttons as his tone is changing."[93]  Fattell also emailed Dawson-Hall stating "I know this guy, if we craft the job description well, it boxes him in and he will begin to implode."[94]  Because a reasonable jury could conclude from the evidence that HSBC demoted plaintiff in retaliation for his complaint, HSBC's motion for summary judgment on the retaliation claims is denied.

D.    *Hostile Work Environment*

HSBC moves also for summary judgment dismissing plaintiff's hostile work environment claim.  A "hostile work environment" exists when the "workplace is permeated with discriminatory intimidation, ridicule, and insult [because of plaintiff's protected status]. . . that is sufficiently severe or pervasive to alter the conditions of the victim's employment."[95]  To survive summary judgment, there must be sufficient evidence for a jury to conclude that the work environment was objectively hostile such that it negatively altered the conditions of employment,

---

[91]      *Id.* Ex. BN.

[92]      *Id.*

[93]      *Id.* Ex. BR.

[94]      Pl. R. 56.1 St. ¶ 57; Borrelli Cert. Ex X, Ex. AH at 141.

[95]      *Schiano v. Quality Payroll Sys. Inc.*, 445 F.3d 597, 604 (2d Cir. 2006) (quoting *Harris v. Forklift Sys. Inc.*, 510 U.S. 17, 21 (1993)); *Alfano v. Costello*, 294 F.3d 365, 380 (2d Cir. 2002).

and that the plaintiff subjectively believed it to be so.[96] "As a general rule, incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive."[97]

Plaintiff's hostile work environment claim is predicated on HSBC's failure to give him a raise or an adequate bonus, issues surrounding his use of vacation time in June 2007, the series of derogatory emails described above, his replacement by Halpin, and the fact that his cubicle was packed up upon his return from FMLA leave.[98] Plaintiff's allegations of a hostile work environment, however, are directly contradicted by his own testimony. Plaintiff admits that his work environment was not hostile from the time he joined HSBC until June 4, 2007 when he filed his age discrimination complaint.[99] Plaintiff further admits that there was no hostility against him between June 4, 2007 and July 16, 2007, other than a "big issue" about taking vacation time.[100] Plaintiff was out of the office until October 9, 2007, when he returned for one day and found his cubicle packed up. He never returned to work thereafter. The short series of emails from three days in October 2007, while plaintiff was not at work, are not sufficiently "continuous and concerted"

---

[96]

See *Schiano*, 445 F.3d at 604.

[97]

*Alfano*, 294 F.3d at 374 (internal quotation marks omitted).

[98]

Pl. Br. at 36.

[99]

Jordan Decl. Ex. C, at 137.

[100]

*Id.* Ex. C, at 147-149. It is undisputed that he took his vacation time.

to constitute a hostile work environment.[101]  Summary judgment in HSBC's favor is therefore appropriate on the hostile work environment claim.

*Conclusion*

For the foregoing reasons, HSBC's motion for summary judgment dismissing the complaint [DI 17] is granted to the extent that all claims save the retaliation are dismissed.  It is denied as to the retaliation claim.

SO ORDERED.

Dated:  January 19, 2010

_____
Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)

---

[101]

See *Feingold v. New York*, 366 F.3d 138, 150-51 (2d Cir. 2004) (finding hostile work environment where plaintiff was subjected to anti-semetic remarks on an "almost daily" basis over several years); *Terry*, 336 F.3d at 149 (hostile work environment claim established by "daily" harrasment).  Cf. *Hayut v. State Univ. of New York*, 352 F.3d 733, 746 (2d Cir. 2003) (finding hostile educational environment where professor made sexually harassing comments "routinely" over the course of a semester).